UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| G. HYDE[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-00782-GCS |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| | ) |
| Defendant. | ) |

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

PROCEDURAL HISTORY

Plaintiff applied for DIB on November 11, 2019, alleging disability as of August 29, 2019. (Doc. 15, Exh. 5, p. 5-12). Plaintiff was denied DBI initially, as well as upon reconsideration. (Doc. 15, Exh. 3). The Administrative Law Judge ("ALJ") held a hearing in March 2022, at which Plaintiff, Plaintiff's attorney, and a vocational expert testified. (Doc. 15, Exh. 2, p. 75-117). The ALJ issued a decision on July 28, 2022, finding that Plaintiff was not disabled because she had the residual functional capacity ("RFC") to perform a reduced range of light work and could perform a significant number of jobs in

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

the national economy. (Doc. 15, Exh. 2, p. 54-74). In January 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it final and appealable. (Doc. 15, Exh. 2, p. 2-4). Plaintiff then went on to file this action pursuant to 42 U.S.C. § 405(g) on March 3, 2023. (Doc. 1).

### ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

I. The Commissioner erred as a matter of law by failing to account for any functional limitations in the RFC related to Plaintiff's irritable bowel syndrome ("IBS"), which was found to be a severe impairment. (Doc. 20, p. 9-15).

II. The Commissioner erred as a matter of law by failing to perform an adequate credibility analysis, in violation of SSR 16-3p. (Doc. 20, p. 16-18).

### APPLICABLE LEGAL STANDARDS

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform

his or her former occupation? and (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential,

it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analysis detailed above. He determined that Plaintiff had not worked at a level of substantial gainful activity since the alleged onset date – August 29, 2019, through her date of last insured of March 31, 2022. (Doc. 15, Exh., 2, p. 59). The ALJ found that Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease, IBS, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"). *Id.* at p. 59-60.

The ALJ also found that Plaintiff had the RFC to "perform light work as defined in 20 C.F.R. § 404.1567(b) except she can never climb ladders, ropes or scaffolds; only occasionally climb ramps and stairs; occasionally stoop, kneel, crouch and crawl; never be exposed to whole body vibration, unprotected heights, or unprotected moving machinery; and is limited to performing simple routine tasks in jobs where changes in duties are the same changes daily, there is no direct interaction with the general public and there is only occasional interaction with co-workers and supervisors." *Id.* at p. 63. (Doc. 15, Exh. 2, p. 66). Regarding Plaintiff's digestive issues, the ALJ recounted and determined the following:

> Once she starts eating her gut starts moving and she has urgency. She never received the right medical care for pelvic prolapse. She wears a pad or diaper. Thirteen of fourteen days she wakes up with incontinence. She tried medications, physical therapy, and adjusting her diet, with no relief. She does not eat during the day until she is home for good. She has three or more bowel movements from 5pm to 9pm. (Doc. 15, Exh. 2, p. 64-65).

…….

> The claimant also reported developing both constipation and diarrhea after coming off psychotropics six months prior and while ulcerative colitis, food allergies, and celiac disease were ruled out, a biopsy to rule out Crohn's disease was pending (B2F/17; B5F). The claimant participated in physical therapy for associated rectal prolapse with improvement. A colonoscopy in September 2018 showed internal hemorrhoids, but was otherwise normal, though treatment notes indicate fecal incontinence (B2F; 15, 17; B5F/27). The claimant reported severe rectal pain, daily fecal incontinence, and diarrhea through February 2019 (B2F/3, 5-12). She did report some improvement with pelvic floor therapy, but by June 2019 had a rectal plug for anal incontinence and a stimulator for IBS recommended (B7F/12, 20). She was told that her symptoms were stress related as she was going through a divorce at the time, and Wellbutrin and Interstim were recommended. The claimant's testimony, considered as a whole, however, indicates that she leaves home daily and is busy throughout the day. (Doc. 15, Exh. 2, p. 66).

Further, the ALJ found that Plaintiff had no past relevant work experience and that considering her age, education, work experience and RFC, that there were jobs in the national economy that claimant could perform. *Id.* at p. 69-70.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

A.  *Evidentiary Hearing*

Plaintiff was represented by an attorney at the hearing in March 2022. (Doc. 15, Exh. 2, p. 75). Plaintiff's last full-time job was with the Army. Plaintiff left the Army "due to a mess of her own medical needs as well as [her] son's medical needs." *Id.* at p. 86. She noted that she was in the process of possibly being "Med Boarded" but ultimately got out

of the Army on the Family Care Plan due to her son's special needs. *Id.* Plaintiff also noted that she currently receives 100% VA disability benefits due to her "individual unemployability." *Id.* at p. 87.

Plaintiff recounted her gastrointestinal issues. Plaintiff stated that once she starts eating, "whatever is in [her] gut is going to start moving whether it's one way or the other." (Doc. 15, Exh. 2, p. 99). She deals with both diarrhea and constipation, and both conditions stem from what she has eaten. *Id.* However, Plaintiff noted that her "biggest issue" is urgency. *Id.* Plaintiff stated that she suffers from rectal prolapse and that she's never been able to get into the right care or do the right physical therapy for it. *Id.* She reported having gone to pelvic floor therapy twice, and it has been recommended that she go for a third course of treatment, but COVID conditions have made it difficult to "get back into" it. *Id.*

Regarding her incontinence, she reported wearing a long pad or a woman's diaper at night because "without failure [she] is woken up by a bowel movement 13 days out of 14." (Doc. 15, Exh. 2, p. 99-100). Plaintiff has seen a GI specialist for the issue and has tried altering her diet, physical therapy, and medications to control her symptoms. *Id.* at p. 100. None of these have provided Plaintiff with relief. *Id.*

When Plaintiff must pick up her children from school, she does not eat until after she picks them up. *Id.* On those days, she does not eat from 6:00 am until 4:00 pm. (Doc. 15, Exh. 2, p. 100-101). Plaintiff reported not feeling comfortable eating at a restaurant with her children because of her incontinence, and they often do "picnics in the car." *Id.* at p. 101. If Plaintiff ate a regular diet consisting of breakfast, lunch, and dinner – Plaintiff

anticipated that she would have multiple bathroom visits related to each of those meals. *Id.* at p. 102. She reported that she experiences pain with her bowel movements because of her anal prolapse and anal hemorrhoids even though she has had several of her hemorrhoids banded and surgically removed. *Id.*

When Plaintiff has an accident, if she has been wearing a diaper, the process for Plaintiff to clean up is at least five to fifteen minutes depending on the severity. (Doc. 15, Exh. 2, p. 109). To clean up, Plaintiff uses a bidet attached to her toilet or takes a shower. *Id*. Plaintiff expressed that it is necessary for her to take a shower half of the time when she experiences an accident. *Id.* Plaintiff expressed concern about cleaning up in a standard work bathroom without a bidet or shower. *Id.* (stating "I don't even know how I would [clean up]. Safety wise – I don't think it would be . . . "). If Plaintiff had an accident at work, Plaintiff stated she would prefer to go home to clean up. *Id.* at p. 110. Generally, she also believes that she would not be able to sufficiently clean herself up if she had an accident at work and she would feel embarrassed if she were not allowed to go clean up at home. *Id.*

A vocational expert, Ms. Susan Shea also testified at the hearing. (Doc. 15, Exh. 2, p. 110-116). Ms. Shea reported that there are regular breaks throughout a workday, and stated the following:

> . . . work 1 and a half to 2 hours, have a 15-minute break, work 1 and a half to 2 hours, have at least a 30-minute period for lunch, return to work for 1 and a half to 2 hours then have a 15-minute break. Return one and a half to two hours which ends the day. In addition to that, there would be two additional breaks, typically of five minutes or less, typically spread out one before the meal period, one after. And they would be five minutes or less. Anything in addition would eliminate work.

(Doc. 15, Exh. 2, p. 112-113). In response to Plaintiff's counsel questioning her about absenteeism for SVP 2 type jobs, the threshold for absenteeism for those positions is as follows:

> A: Absenteeism would be, if there were two or more days per month of absenteeism on an ongoing basis, the individual would likely be terminated.
> Q: Okay, and then just for clarification, if an individual were to show up late or leave early by at least one hour in time, would that be considered an absence?
> A: Yes, it would.

*Id.* at p. 114.

**B.   Relevant Medical Records**

Plaintiff's symptoms of IBS reportedly began in 2017. *See, e.g.*, (Doc. 15, Exh. 8, p. 139) (stating that "[s]ymptoms started in 2017 with difficulty holding bowel movements.").

On September 17, 2018, records state that Plaintiff was in constant abdominal pain, which was quite severe at times. (Doc. 15, Exh. 7, p. 30). She reported that she had been to the emergency room between eight and nine times for abdominal pain. *Id.* Plaintiff also noted that she had experienced 90 lbs. of unintentional weight loss due to the severity of her symptoms. *Id.* In the treatment plan for the visit, the record notes that Plaintiff has a history of fecal incontinence, chronic constipation, and rectal pain. *Id.*

On October 26, 2018, Plaintiff's medical records state that Plaintiff reported "continued fecal urgency, some loose stools and about 1 fecal incontinence episode per week." (Doc. 15, Exh. 7, p. 28). Additionally, Plaintiff reported that she was "avoiding

multiple foods including dairy and processed carbs and is basically sticking to a whole food diet." *Id.* However, Plaintiff's IBD panel came back negative. *Id.* at p. 29.

On June 18, 2018, records state that Plaintiff has "persistent incontinence" with "variable bowel movements." (Doc. 15, Exh. 8, p. 164). Other symptoms reported included "post prandial abdominal bloating and discomfort." *Id.* Plaintiff claimed that these symptoms did not improve after bowel movements. *Id.*

A November 4, 2019, a note in Plaintiff's medical records indicated that Plaintiff uses "rectal inserts to avoid incontinence during more inconvenient times." (Doc. 15, Exh. 8, p. 140).

On November 10, 2020, medical records indicate that Plaintiff was continuing to experience "chronic symptoms," noting "enhanced gastrocolic reflex with need to have a bowel movement after any po [food] intake." (Doc. 15, Exh. 8, p. 141). Plaintiff reported "occasional associated fecal incontinence" and that she will use "adult diapers in certain situations." *Id.* Plaintiff reported that payllium helps regulate the bowel movements "somewhat" and that she "uses CBD suppositories for cramps and bloating." *Id.* The treating physician recognized Plaintiff as having "irritable bowel syndrome with diarrhea." *Id.*

C.   *State Agency Consultants' Opinions*

The ALJ relied on two consultative examinations in support of his recommendation regarding Plaintiff's IBS. The first consultative examination took place on October 14, 2020, and was conducted by Dr. Kathleen Treanor. (Doc. 15, Exh. 3, p. 23-36). Dr. Treanor had copies of the previously discussed medical records above. *Id.* p. 24-

27. Dr. Treanor's analysis recognized that Plaintiff suffered from irritable bowel syndrome. *Id.* at p. 28. However, in her review of Plaintiff's physical issues, she only noted the following in relation to Plaintiff's diagnosis of irritable bowel syndrome: "8/10/18, ED-abd. Pain. PE: diffuse abd. Tenderness, otherwise nl. CT: mod- marked stomach distension, no obstruction or inflammation. DX: UTI, cystitis, constipation." *Id.* at p. 28. Still, she recognized Plaintiff's irritable bowl disease impairment as "severe." *Id.* at p. 29. The second consultative examination took place on July 25, 2021, and was conducted by Dr. Cristina Orfei. (Doc. 15, Exh. 3, p. 45-57). Dr. Orfei only noted the following regarding Plaintiff's gastric symptoms "AOD 8/29/19, alleged irritable bowel syndrome." *Id.* at p. 45.

## DISCUSSION

**A.  Whether the Commissioner erred as a matter of law by failing to account for any functional limitations in the RFC related to Plaintiff's IBS, which was found to be a severe impairment.**

Plaintiff asserts that the ALJ failed to build an "accurate and logical bridge" between his finding that Plaintiff's irritable bowel disease constitutes a severe condition and the RFC. (Doc. 20, p. 11-14). Defendant opposes Plaintiff's characterization of the ALJ's decision and believes that substantial evidence supported the RFC and that the ALJ accurately grappled with the available evidence in making his determination. (Doc. 26, p. 3-9). Upon review of the record, the Court finds that the ALJ did not adequately consider Plaintiff's limitations relating to her allegations of fecal incontinence. Thus, the Court remands the case consistent with the discussion herein.

In reviewing for substantial evidence, the entire administrative record is taken into

consideration, but the reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The Seventh Circuit "has repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [their] ultimate conclusion while ignoring evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). When an ALJ ignores an entire line of evidence, contrary to the ruling, it makes it impossible for a district court to assess whether the ruling rested on substantial evidence. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Ignoring evidence in this way requires the district court to remand to the agency. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

The Court believes that the ALJ ignored Plaintiff's testimony relating to her episodes of fecal incontinence in connection with her irritable bowel disease diagnosis. While testifying at the evidentiary hearing before the ALJ, Plaintiff described the cleanup procedure she follows with an incontinence episode. This clean up routine involves either a bidet or a shower. Plaintiff estimated that cleanup takes anywhere between five and fifteen minutes, depending on the severity of the accident. Half of the time when Plaintiff experiences an incontinence episode, she reports that clean up requires a shower. Plaintiff specifically remarked that she is unsure she would be able to cleanup safely in a standard work bathroom with only a sink and toilet.

When explaining his RFC determination, it appears as though the ALJ only considered Plaintiff's "pain and discomfort," and it is questionable whether he

considered this in the context of Plaintiff's irritable bowel syndrome. Defendant concedes that at the very least, the ALJ only considered Plaintiff's "pain and discomfort" relating to her irritable bowel syndrome diagnosis. (Doc. 26, p. 5-6). After recounting the facts, the ALJ determined the Plaintiff's RFC, as follows:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment and is capable of performing work at the light exertional level as her objective medical findings, including imaging and physical examinations during the relevant period are generally normal, with normal and unassisted gait, normal sensation, normal reflexes, mostly normal range of motion except in her lumbar spine and right thumb, and normal muscle strength (B6F; B10F; B11F; B12F). Despite the claimant's relatively normal objective findings, out of an abundance of caution and in consideration for the claimant complaints of body and joint pain, the undersigned limits the claimant to never climbing ladders, ropes, or scaffolds; only occasionally climbing ramps and stairs; and only occasionally stooping, kneeling, crouching, and crawling as the claimant alleged severe physical problems (Hearing Testimony; B6F; B10F; B11F; B12F).) Additionally, to prevent further spinal injury and in consideration of the claimant's reports of syncope and vision problems, the undersigned finds that the claimant must avoid exposure to whole body vibration, unprotected heights, or unprotected moving machinery (B6F; B10F; B11F; B12F). Further, in consideration of the claimant's generalized anxiety disorder, major depressive disorder, and PTSD the claimant is limited to performing simple routine tasks in jobs where changes in duties are the same changes daily, there is no direct interaction with the general public, and there is only occasional interaction with co-workers and supervisors. These limitations adequately accommodate her mental health impairments, as the claimant's mental health treatment was conservative, and she has not sought or required inpatient or emergency mental health treatment during the relevant period. Additionally, her mental status exams were predominately normal and generally show normal mood and affect, normal thought content with no hallucinations or delusions, appropriate thought processes, and normal fund of knowledge (B7F/56, 59, 64, 73; B9F; B11F/5, 13; B12F/6).

(Doc. 15, Exh. 2, p. 68-69).

Plaintiff correctly points out that the ALJ parsed out a specific RFC analysis for each severe medical condition Plaintiff experienced. (Doc. 20, p. 12). However, he did not do so for Plaintiff's irritable bowel syndrome and her related fecal incontinence. Moreover, even if the ALJ did mean to include Plaintiff's irritable bowel syndrome diagnosis in the category of "body and joint pain," he did not account for plaintiff's need for ready access to the restroom and time off task, that necessarily accompanies the fecal incontinence associated with her irritable bowel syndrome diagnosis.

Relatedly, the ALJ also did not assess Plaintiff's possible additional absenteeism due to fetal incontinence accidents. The VE, Ms. Susan Shea, testified that "[a]bsenteeism would be, if there were two or more days per month of absenteeism on an ongoing basis, the individual would likely be terminated." During the evidentiary hearing, Plaintiff's attorney asked "if an individual were to show up late or leave early by at least one hour in time, would that be considered an absence?" Ms. Shea responded that it would be. This question was probably speaking to instances where Plaintiff would be required to go home to shower if she experienced a severe incontinence episode while at work. If Plaintiff experienced more than two of these instances in a month, based on the VE's testimony she would be let go. The ALJ did not consult the record to determine how many severe episodes per month Plaintiff experiences to ascertain whether Plaintiff was employable in light of this limitation.

Given that the ALJ did not consider these specific circumstances in relation to Plaintiff's irritable bowel disease, the Court remands this case to the Commissioner for rehearing consistent with this order. As the Court has found that the ALJ committed error

regarding Plaintiff's complaints and symptoms that requires remand, the Court need not address Plaintiff's remaining argument. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**DATED:  March 27, 2024.**

Digitally signed by Judge Sison
Date: 2024.03.27 14:56:47 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**